## U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number: **10-07164-jw**

### ORDER GRANTING RELIEF FROM AUTOMATIC STAY

The relief set forth on the following pages, for a total of 14 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**10/06/2011**



*[signature: John E. Waites]*
Chief US Bankruptcy Judge
District of South Carolina

Entered: 10/06/2011

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 10-07164-JW |
| | Chapter 13 |
| Otis Neals and Melvine Donlee Neals, | **ORDER GRANTING RELIEF FROM AUTOMATIC STAY** |
| Debtor(s). | |

This matter comes before the Court upon an Amended Motion for Relief from Stay filed by U.S. Bank, National Association, as Trustee for RASC 2005-EMX2 ("U.S. Bank") by and through America's Servicing Company ("ASC"). Debtors objected to the Motion, and a hearing was held. Pursuant to Fed. R. Civ. P. 52, which is made applicable to this matter by Fed. R. Bankr. P. 7052 and 9014(c), and based upon the pleadings and testimony presented at the hearing, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACTS

1. Debtors filed a joint petition under chapter 13 of the Bankruptcy Code on October 4, 2010.

2. On November 30, 2010, Debtors filed an Amended Schedule D, which indicated that ASC had a secured claim on Debtors' residence at 114 Mulberry Hill, Summerville, South Carolina (the "Property") in the amount of $178,000.00. The value of the Property was listed on Schedule D as $175,000.00.

3. Debtors filed an amended chapter 13 plan (the "Plan") on December 22, 2010. The Plan provided that Debtors would continue to make regular monthly payments directly to ASC and would cure their mortgage arrearage through payments to the chapter 13 trustee.

4. On May 12, 2011, an order was entered confirming the Plan.

1

5. ASC filed an Amended Motion for Relief from Stay (the "Motion") on July 13, 2011. In the Motion, ASC asserts that Debtors are in default on their post petition direct payments and that there is no equity in the Property. According to the Certification of Facts attached to the Motion, ASC claims that the debt owed by Debtors is $205,757.78 and the fair market value of the Property is $175,000.00.

6. Debtors filed an Objection to the Motion on July 20, 2011, claiming that cause does not exist to lift the stay, that ASC is adequately protected, that the Property is necessary for an effective reorganization, and that ASC cannot demonstrate that it has standing to seek the relief requested.

7. Debtors filed an objection to ASC's claim on September 16, 2011. The objection asserts that ASC's claim should be disallowed because the supporting documentation attached to the claim is inadequate to show that ASC is the holder of the promissory note.

8. On September 19, 2011, a hearing was held on the Motion. At the hearing, counsel for ASC argued that no post petition direct payments had been made and that there was no equity in the property. Debtors did not dispute these facts. Rather, Debtors stated that they were confused as to whether they were supposed to be submitting their mortgage payments to ASC and questioned whether the original promissory note had been properly assigned.

9. At the hearing, ASC presented an original promissory note (the "Note") in the amount of $191,900.00 and dated February 23, 2005, which appears to include Debtors' signatures, and a copy of a recorded mortgage (the "Mortgage"), which grants Executive Mortgage, LLC, a security interest in the Property to secure repayment of the Note. The Note lists the lender as Executive Mortgage, LLC. Attached to the Note was an Addendum (the "Addendum"), dated February 23, 2005, containing a blank indorsement signed by Executive

2

Mortgage, LLC, through its attorney in fact, and an Allonge to Note (the "Allonge"), dated March 21, 2005, showing an initial indorsement by Emax Financial Group Inc. to Residential Funding Corporation and a subsequent indorsement by Residential Funding Corporation to U.S. Bank. A record of Debtors' payment history (the "Payment History") on the loan from July 1, 2008 to July 12, 2011 was also presented, indicating that no payments have been made since July 1, 2010.

10. To establish the authenticity and originality of the Note, Mortgage, Addendum, and Allonge, ASC presented the testimony of Robert Bateman, ASC's Vice President of Loan Documentation. Mr. Bateman stated that he is a records custodian for ASC, and his duties include reviewing and researching notes, mortgages, and payment histories in preparation for litigation. He also testified regarding the relationship between U.S. Bank and ASC, explaining that U.S. Bank was a trustee for a trust that contained Debtors' Note and Mortgage, and that ASC was the servicing agent of the Note and Mortgage. According to Mr. Bateman, ASC began servicing the loan in March, 2007 and continues to do so to date.

11. After presenting Mr. Bateman's testimony, counsel for ASC sought to admit into evidence the Note, the Payment History, and the Mortgage. Debtors' counsel objected on the basis that Mr. Bateman was not the proper vehicle for admitting the Note and that the Payment History was incomplete. The Court overruled the objection and the Note, Payment History, and Mortgage were admitted into evidence.

12. Debtor Otis Neals also testified at the hearing. Mr. Neals testified that prior to filing for bankruptcy, he and his co-debtor, Mrs. Neals, made their monthly mortgage payments to ASC. However, Mr. Neals claims that he stopped making payments because he questioned

whether ASC was the holder of the Note and Mortgage after he was referred to U.S. Bank when he called ASC to inquire about his loan.

13.  Counsel for Debtors offered two letters into evidence—one from U.S. Bank dated August 19, 2011 ("U.S. Bank Letter") and one from ASC dated July 14, 2011 ("ASC Letter")—which were purportedly sent to Debtors in response to their inquiries. The letters were admitted into evidence without objection. The U.S. Bank Letter stated that U.S. Bank was "unable to assist" with Debtors' request for information. However, the U.S. Bank Letter expressly stated that "[t]he servicer, America's Servicing Company, has 100% Power of Attorney and is responsible for anything and everything related to the loan and the physical real estate." The Letter also listed ASC's phone number. The ASC Letter stated that Debtors' loan was originated on February 23, 2005, which is the date listed on the Note. The ASC Letter also indicated that ASC began servicing the loan on March 1, 2007, and that a "Welcome Letter" dated February 21, 2007, was sent to Debtors. Mr. Neals claimed he was confused because the ASC Letter referenced U.S Bank by indicating that U.S. Bank was trustee for a pool of loans, which included Debtors' loan, that were held in trust. However, the ASC letter also stated, "the Trustee will more than likely refer you back to us to answer any questions about the loan or the servicing of the loan." Mr. Neals also stated that he received a letter from U.S. Bank initiating foreclosure proceedings. A copy of that letter was not offered at the hearing.

14.  On cross examination, Mr. Neals asserted that he questioned whether ASC was the proper party to receive their mortgage payments based on the ASC Letter and U.S. Bank Letter and the general state of the mortgage industry. He went on to state, "the reason why we're here is we asked for clarity." Upon being questioned whether the signatures on the Note and Mortgage were his own, Mr. Neals stated, "I can't say 100 percent that that signature is my

4

signature." He did admit that he and Mrs. Neals borrowed the same amount reflected on the Note from Executive Mortgage, LLC, on that date.

## **CONCLUSIONS OF LAW**

U.S. Bank, through its servicer, ASC, requests relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1), which provides that the Court shall grant relief "for cause, including the lack of adequate protection of an interest in property of such party in interest," and pursuant to § 362(d)(2), which provides that relief shall be granted if "the debtor does not have an equity in such property," and "such property is not necessary to an effective reorganization." Such relief may only be granted to and upon the request of a "party in interest." In re Woodberry, 383 B.R. 373, 376 (Bankr. D.S.C. 2008). Debtors object to the Motion, asserting that ASC lacks standing to bring the Motion, that the Property is necessary to an effective reorganization, and that no cause exists to lift the stay.

**I.      Party in Interest Under § 362(d)**

Debtors first question whether ASC is a "party in interest" and thus has standing to seek relief from stay. The Bankruptcy Code does not define the term, "party in interest." A movant's status as a "party in interest" under § 362(d) "must be determined on a case by case basis with reference to the interest asserted and how said interest is affected by the automatic stay." Woodberry, 383 B.R. at 378 (quoting In re Vienland, 41 B.R. 134, 138 (Bankr. N.D. Ohio 1984)). Additionally, the movant must establish that it is the "real party in interest" under Fed. R. Civ. P. 17(a), which is made applicable to contested matters in bankruptcy proceedings by Fed. R. Civ. P. 7017 and 9014(c). The Fourth Circuit has defined a "real party in interest" in the context of Fed. R. Civ. P. 17 as a "person who possesses the right to enforce the claim and who

5

has a significant interest in the litigation." Va. Elec. & Power Co. v. Westinghouse Elec. Corp., 485 F.2d 78, 83 (4th Cir. 1973).

### a. Res Judicata

Initially, the Court observes that it has previously held that a confirmed chapter 13 plan, which represents a new contractual agreement between debtors and their creditors, is *res judicata* on the issue of a creditor's rights as a party in interest with standing to seek relief from the stay. See In re Burretto, C/A No. 05-07146-JW, slip op. at 3–4 (Bankr. D.S.C. July 23, 2008) (citations omitted). Debtors identified ASC as the proper party in interest to receive payment on the Note and Mortgage in their schedules, statements, and proposed plan, as well as in their confirmed Plan. Therefore, absent a greater showing to justify a change in their position, Debtors are barred from now asserting that ASC is not a party in interest with standing to seek relief from stay.

### b. A Servicer is a "Party in Interest"

Additionally, there is a general view, which has been accepted in this jurisdiction and others, that a loan servicer is a "party in interest" and has standing by virtue of its pecuniary interest in collecting payments under the terms of the note and mortgage. See In re Woodberry, 383 B.R. at 379 ("It seems the better view that a loan servicer, with a contractual duty to collect payments and foreclose mortgages in the event of default, has standing to move for relief from stay in the Bankruptcy Court."); In re Miller, 320 B.R. 203, 206 n. 2 (Bankr. N.D. Ala. 2005) (permitting a servicer to litigate motion for relief from stay); In re O'Dell, 268 B.R. 607, 618 (N.D. Ala. 2001), aff'd 305 F.3d 1297, 1302 (11th Cir. 2002) ("A servicer is a party in interest in proceedings involving loans which it services); Bankers Trust (Delaware) v. 236 Beltway Inv., 865 F.Supp. 1186, 1191 (E.D. Va. 1994) (concluding that both lender and servicer have standing

to foreclose even if servicer is not the holder of the mortgage); In re Tainam, 48 B.R. 250, 252 (Bankr. E. D. Pa. 1985)(finding that a mortgage servicer is a party in interest for purposes of Fed. R. Civ. P. 17(a) in a relief from stay proceeding). This Court agrees with the general view that a loan servicer has standing to move for relief from stay.

### c. ASC Possesses the Right to Enforce the Note

Finally, it appears that ASC possesses the right to enforce the Note under South Carolina's version of Article Three of the Uniform Commercial Code.[1] A note secured by a mortgage on real property is a negotiable instrument, and is thus governed by Article Three. Swindler v. Swindler, 584 S.E.2d 438, 440–41 (S.C. Ct. App. 2003) (finding that Article Three governs a note secured by a mortgage on real property); see also Midfirst Bank, SSB, v. C.W. Haynes & Co., Inc., 893 F. Supp. 1304, 1312 n.3 (D.S.C. 1994) ("Article Three of the UCC controls transfers of negotiable instruments, and the mortgage notes are clearly negotiable.")

Section 36-3-301 of Article Three provides that the "person entitled to enforce" an instrument includes (1) the holder of the instrument, (2) a nonholder in possession of the instrument who has the rights of a holder, or (3) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 36-3-309 or § 36-3-418(d). A "holder" under the Article Three is "a person who is in possession of . . . an instrument . . . indorsed to him or to his order or to bearer or in blank." § 36–1–201(20). The Note contains an initial indorsement in blank executed by original holder, Executive Mortgage, LLC, a second specific indorsement from Emax Financial Group, LLC to Residential Funding Corporation and a third indorsement by Residential Funding Corporation to U.S. Bank. Under § 36-3-205, the Note was initially a

---

[1] South Carolina law is applicable pursuant to the terms of the Note and Mortgage.

7

bearer instrument that was negotiable by delivery alone,[2] but once it was specifically indorsed,[3] it was converted to an instrument payable to the order of the specific indorsee, negotiable only by the indorsement of the specific indorsee. See § 36-3-205(a) (providing that when an instrument was originally endorsed in blank, the instrument may be "negotiated by transfer of possession alone until specifically indorsed"); § 36–3–205(b) (providing that when specifically endorsed, an instrument "may be negotiated only by the indorsement of that person").

While ASC is not the holder under § 36-1-201(20) because the Note is not specifically indorsed to ASC, ASC does have possession of the original Note and accompanying documents and may be able to enforce the Note if it qualifies as a nonholder in possession who has the rights of a holder. The Official Comment to Section 36–3–301 of the South Carolina Code of Laws states that a nonholder in possession includes "a person that acquired rights of a holder . . . under Section 3–203(a)." Section 36–3–203(a) provides that "[a]n instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." ASC presented the testimony of Mr. Bateman, which indicated that U.S. Bank granted ASC, as its servicing agents, full authority regarding the Note and Mortgage, including the right to enforce these documents and transferred possession of the original Note to ASC. Moreover, the U.S. Bank Letter, which was presented into evidence by Debtors, provides that "[ASC] has 100% Power of Attorney and is responsible for anything and everything relating to the loan and the physical real estate." The Court finds that ASC has received delivery and taken possession of the Note for the purpose of enforcing it on behalf of U.S. Bank. Debtors did not present evidence contradicting ASC's right to enforce

---

[2] In re Woodberry, 383 B.R. at 377 (finding an allonge that contained a blank indorsement turned corresponding note into a bearer instrument and therefore ownership could be proven by possession)

[3] It is reasonable to infer that Emax Financial Group, LLC was the bearer at the time it executed the indorsement to Residential Funding Corporation.

the Note.[4] In light of Mr. Bateman's credible and convincing testimony, ASC's presentation of the original Note, and ASC's status as a loan servicer responsible for collecting payments on and enforcing the terms of the Note on behalf of U.S. Bank, this Court concludes that ASC is a nonholder in possession who has the rights of a holder, including the right to enforce the Note under Article Three.

In addition to having a right to enforce the claim, ASC must also have a "significant interest in the litigation" in order to be a real party in interest. Va. Elec. & Power Co., 485 F.2d at 83. As the servicer for Debtors' loan, ASC has a pecuniary interest in collecting payments under the terms of the Note and Mortgage. It is ASC's contractual duty to collect these payments and the automatic stay prevents ASC from attempting to collect the past due amount and to enforce the terms of the Note by initiating foreclosure proceedings or other means. See In re Woodberry, 383 B.R. at 379 (finding that the "general rule is that a mortgage servicer has standing by virtue of its pecuniary interest in collecting payments under the terms of the note and mortgage" and citing cases in support). Accordingly, the Court finds that ASC's interest in this litigation is sufficiently significant to satisfy the second prong of the "real party in interest" standard. See also CWCapital Asset Mgmt., LLC v. Chi. Props., LLC, 610 F.3d 497, 500–01 (7th Cir. 2010) (finding that although legal title to a mortgage was held in trust, the mortgage servicer was a real party in interest); Greer v. O'Dell, 305 F.3d 1297, 1302 (11th Cir. 2002) ("A servicer is a party in interest in proceedings involving loans which it services.")

---

[4] It must be noted that Debtors questioned whether the signatures on the Note were actually their own. Debtors did admit that they executed a note with Executive Mortgage, LLC—the lender listed on the Note—on the date indicated on the Note's face. Debtors failed to put forth any evidence challenging the authenticity of the signatures beyond Mr. Neals' statement that he "wasn't 100 percent sure" that the signature on the Note was his. Based on Mr. Bateman's testimony, Mr. Neals' admission that he executed a note with Executive Mortgage, LLC on the date indicated on the Note's face, and the lack of other evidence challenging the authenticity of the Note, the Court finds that the Note produced at the hearing is genuine and authentic.

9

Based on the foregoing, the Court concludes that ASC has standing to seek relief from stay as a "party in interest" under § 362(d) and a "real party in interest" under Fed. R. Civ. P. 17.

## II.     Cause to Grant Relief from Stay under § 362(d)(1)

ASC first seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1), which provides that the Court shall grant relief "for cause, including the lack of adequate protection of an interest in property of such party in interest." Debtors argue that there is no cause to lift the stay, that ASC is adequately protected, and that the Property is necessary for their effective reorganization. ASC bears the burden of proof on the validity of the lien, the amount of its debt, and Debtors' lack of equity.  11 U.S.C. § 362(g)(1); In re Estate of Lake Blalock, LLC, C/A. No. 09-08987-JW (Bankr. D.S.C. Feb. 16, 2010).  Debtors bear the burden on all other issues, including lack of cause, the existence of adequate protection, and the necessity of the collateral for an effective reorganization that is within reasonable prospect.  11 U.S.C. § 362(g)(2); In re Henderson, 395 B.R. 893, 898-99, (D.S.C. 2008), Estate of Lake Blalock, at *4.

Under Section § 362(d)(1), a bankruptcy judge has "broad discretion to determine what constitutes 'cause' sufficient to warrant relief from stay." In re Breibart, C/A No. 03-07440-W, slip op. at 2 (Bankr. D.S.C. Feb. 17, 2004).  Since "cause" is not specifically defined by the Bankruptcy Code, courts must determine whether relief is appropriate by examining the totality of the circumstances in each case. See Robbins v. Robbins (In re Robbins), 964 F.2d 342, 345 (4th Cir. 1992).

ASC argues that cause exists to lift the stay because Debtors have defaulted on their post petition direct payments.  While failure to make payments to a creditor after confirmation can constitute cause to modify or lift the automatic stay, see Americredit Fin. Servs., Inc. v. Nichols (In re Nichols), 440 F.3d 850, 856 (6th Cir. 2006), a debtor's failure to make post petition

10

payment "does not *ipso facto* establish cause for relief." Mendoza v. Temple-Inland Mortg. Corp. (In re Mendoza), 111 F.3d 1264, 1271 (5th Cir. 1997). Courts are less inclined to lift the stay where there is equity in the collateral and a debtor's failure to make payments was due to circumstances beyond their control, such as unexpected job loss or illness. See In re Nichols, 550 F.3d at 856. However, courts have found cause to exist when there has been a "substantial" default in performance of the terms of a plan or when there is a nonexistent equity cushion along with a continued failure to make monthly payments under loan documents. See Equitable Life Assurance Soc'y of the U.S. v. James River Assocs. (In re James River Assocs.), 148 B.R. 790, 797 (E.D. Va. 1992) (holding that a continued failure to make mortgage payments along with a non-existent equity cushion can constitute "cause"); In re Kerns, 111 B.R. 777, 789-90 (S.D. Ind. 1990) (same); In re Quinlan, 12 B.R. 516, 517 (Bankr. W.D. Wis. 1981) (finding that a debtor's "unexcused failure" to make direct payments to a creditor in accordance with confirmed chapter 13 plan constituted cause to grant relief from stay).

  Debtors do not dispute that they have made no post petition direct payments to AMC. Excluding October of 2010—the month Debtors filed for bankruptcy protection—this calculates to eleven post petition direct payments, four of which were due after confirmation. The Payment History indicates that the last payment Debtors made directly to ASC was on July 1, 2010. Debtors have not claimed that they stopped making post petition direct payments due to an unexpected job loss or other circumstance beyond their control. See In re Toomer, C/A No. 10-7273, slip op. (Bankr. D.S.C. Oct. 5, 2011) (finding no cause for relief from stay where the debtor's failure to make payment was due to job loss and the debtor had significant equity in the property); In re Nichols, 440 F.3d at 856 (stating that cause does not exist where there is an equity cushion and the failure to make payments was due to circumstances beyond the debtor's

11

control, such as job loss or illness). Rather, Debtors stated at the hearing that they failed to make the payments because they were confused as to what entity owned the Note based upon the correspondence they received from U.S. Bank and ASC. However, Debtors admitted to making prepetition mortgage payments to ASC and listed ASC in their Schedules as the holder of a secured claim on the Property as well as a party to receive payments under the confirmed Plan. Thus, while Debtors may have not received satisfactory customer service from ASC or U.S. Bank in response to their inquiries, there was recognition both prepetition and post petition that Debtors were to make mortgage payments to ASC. This Court finds that such recognition combined with the letters from ASC and U.S. Bank indicate that Debtors were on notice to make monthly mortgage payments to ASC. Under the circumstances present in this case, Debtors' asserted confusion regarding who was entitled to receive payments is not a good cause for their failure to make payments, especially considering the fact that they did not retain sufficient funds to make up the missed payments that they acknowledged they owed to some entity. For these reasons, this Court cannot conclude that Debtors' failure to make their monthly mortgage payments is excusable.

This Court finds that Debtors' failure to make any direct payments to ASC since the filing of their petition almost a year ago constitutes a substantial default of their obligations under the terms of the chapter 13 plan and the Note and Mortgage, and thus constitutes cause for relief from the automatic stay under § 362(d)(1).

Debtors have further failed to demonstrate that ASC's interest is adequately protected through the presence of an equity cushion or by periodic payments. See In re Estate of Lake Blalock, LLC, C/A. No. 09-08987-JW (Bankr. D.S.C. Feb. 16, 2010) (stating that adequate protection includes a "creditor's equity cushion or periodic payments sufficient to compensate

12

the creditor for a diminution in value of the creditor's collateral"). Debtors do not dispute that there is no equity in the Property. While Debtors' counsel indicated that Debtors had $8,000.00 that they would be willing to pay toward the arrearages of ASC's claim, Debtors did not offer a specific proposal to cure the arrearages. It appears that a payment of $8,000 would be insufficient to cure the post petition default, which is estimated to be $15,242.00, as of the date of the hearing. Accordingly, the Court finds that Debtors have not negated the Court's finding that cause exists for relief under § 362(d)(1).

### III.  Relief from Stay Pursuant to 11 U.S.C. § 362(d)(2)

ASC further seeks relief from stay pursuant to § 362(d)(2), which provides for relief from the stay where "the debtor does not have an equity in such property," and "such property is not necessary to an effective reorganization. In light of its conclusion that cause exists for relief from the stay pursuant to 11 U.S.C. § 362(d)(1), the Court finds it unnecessary to address whether relief is also appropriate under § 362(d)(2).

### CONCLUSION

Based on the foregoing, the Court concludes that 1) ASC is a party in interest and, as such, is entitled to seek relief from the stay and 2) cause exists to lift the stay pursuant to § 362(d)(1). Therefore, ASC's Motion for Relief from Stay is granted.

**AND IT IS SO ORDERED.**